David Abrams, Attorney at Law (DA-8126)
305 Broadway, Ninth Floor
New York, New York 10007
Tel. 212-897-5821 Fax 212-897-5811

ROSS, J.

United States District Court
Eastern District of New York

FOLLAK

CV 02 5975

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

NOV 1 2 2002

★ BROOKLYN OFFICE ★

| | |
|---|---|
| Foy Salmeron, Martha Jalon, and Zoya Bangiew, | ) ) ) |
| Plaintiffs, | ) ) |
| - against - | ) ) |
| International Allied Medical Professions, Inc., and Institute of Allied Medical Professions, | ) ) ) ) |
| Defendants. | ) ) |

Index No.: _____

JURY TRIAL DEMANDED

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, complaining of the Defendants by their attorney, David Abrams, Attorney at Law, respectfully set forth and allege as follows:

**I.    Parties**

1.    Plaintiff Foy Salmeron is a natural person residing at 117 Marvin Avenue, Hempstead, New York.

2.    Plaintiff Martha Jalon is a natural person residing at 21-28 31 Avenue #3R, Astoria, New York.

3.    Plaintiff Zoya Bangiew is a natural person residing at 232-03 Seward Avenue, Queens Village, New York.

4.    Upon information and belief, Defendant Institute of Allied Medical Professions (the "Institute") is an educational corporation chartered in or about 1976 by the Board of Regents of the State of New York, with a principal place of business at 405 Park Avenue, New York, New York. The Institute also maintains offices and teaching facilities at 91-31 Queens Boulevard, Elmhurst, New York.

5.    Upon information and belief, Defendant International Allied Medical Professions, Inc., ("IAMP") is a for-profit corporation formed in or about 1998, and is an operator of the Institute, with a principal place of business at 425 Park Avenue, New York, New York.

## II.   Venue and Jurisdiction

6.    Venue in the Eastern District of New York is appropriate pursuant to 18 U.S.C. Section 1391(b)(1) in that both of the Defendants reside in New York and the Institute maintains a continuous and systematic presence in the Eastern District.   Further, a substantial part of the events or omissions giving rise to the below claims took place in the Eastern District of New York.

7.    Subject matter jurisdiction over this action exists pursuant to 28 U.S.C. Sections 1331 and 1367 in that a claim is made that arises under the laws of the United

States, specifically 18 U.S.C. Sections 1961-64; and the remaining claims form part of the same case or controversy.

8.   Personal jurisdiction exists over the Defendants in that both reside in the State of New York.

### III. Background

9.   On information and belief, the Institute is in the business of offering post-secondary education in medical imaging technologies, such as MRI, ultrasound, and Nuclear Medicine.

10.   On information and belief, the Institute is not licensed or registered by the State Education Department pursuant to Section 5001 of the State Education Law.

11.   In or about May of 2002, the Plaintiffs Salmeron, Jalon, and Bangiew (collectively, the "Plaintiffs") enrolled in the Institute's Diagnostic Medical Sonography program (the "Ultrasound" program).

12.   On information and belief, the Ultrasound program was a 15-month program, divided into at least five semesters.

13.   On information and belief, in connection with their enrollment in the Institute's Ultrasound program, the Plaintiffs executed, on or after May 21, 2002, Enrollment Agreements.

14.   As provided in the Enrollment Agreements, the tuition charged for the Ultrasound program was approximately U.S.

$15,000.00 per student.  The Plaintiffs paid for this through a combination of loans, cash, and assumption of obligations.

15.  Specifically, Plaintiff Bangiew paid $6,600 in cash and signed a financing agreement with the Institute. Plaintiff Jalon borrowed the entire $15,000 through a loan from Key Bank, a federally chartered financial institution. Plaintiff Salmeron entered into several transactions, the effect of which was to borrow $10,000 from Key Bank and pay the remaining $5,000 out of pocket.  The above mentioned loans were arranged by the Institute, IAMP (collectively, the "Defendants") and/or their agents.

16.  As set forth in more detail below, agents of the Defendants caused the loan applications in question to contain false and fraudulent information.

17.  In addition to tuition, the Plaintiffs paid other fees in connection with their enrollment, such as loan application fees and other application fees.

18.  The Enrollment Agreements executed by the Plaintiffs provided, among other things, that in the event the student signing the agreement withdrew or was dismissed more than eight weeks from the start of the program, none of the tuition would be refunded.

## IV.   The Physics Class

19.   Among the first classes in the Ultrasound program was a class in Physics.

20.   On information and belief, the instructor of the Physics class, Thomas Steffens, was and is unqualified to teach Physics.   In particular, the Institute's president, Thomas Haggerty has claimed that Mr. Steffens holds a Ph.D. in Physics from the University of Michigan.   However, the University of Michigan has no records of attendance by anyone named "Thomas Steffens."

21.   Moreover, the quality of instruction was poor.   Mr. Steffens did not present the material in a clear coherent manner.   Further, his classroom demeanor was marked by a demeaning, sarcastic attitude.   Finally, on more than one occasion, he mis-advised the class as to what material would be covered on examinations.

22.   Despite diligent effort, the Plaintiffs failed the Physics class.   On information and belief, at least one third (1/3) of the class failed the Physics class.

23.   Subsequently, on or about July 31, 2002, the Plaintiffs were informed that they would not be permitted to attend further components of the Ultrasound program.

## V.    The Failures of the Defendants

24.    At no time prior to or after enrollment did the Institute, IAMP, or any of their agents, warn, counsel, or advise the Plaintiffs that without a strong background in Physics they faced a significant chance of failing that class.

25.    Nor did the Institute or IAMP offer any entrance or placement examination beyond requiring a high school diploma.

26.    Nor did the Institute, IAMP, or any of their agents advise, counsel, or warn the Plaintiffs that the Institute was operating without a license pursuant to Section 5001 of New York's Education Law.

27.    Nor did the Institute, IAMP, or any of their agents advise, counsel or warn the Plaintiffs that the Physics instructor, Thomas Steffens, was unqualified to teach Physics.

28.    More than 45 days have elapsed since the Plaintiffs attendance at the Institute ceased, and despite due demand, neither the Institute nor IAMP have refunded any of the Plaintiffs' tuition.

## VI.   Causes of Action and Demands for Relief

### COUNT ONE: RACKETEERING -- 18 U.S.C. Section 1962(c)

29.  The allegations of paragraphs 1 through 28 are incorporated as if restated herein.

30.  Chartered in 1976, the Institute has long been a non-profit entity in the business of providing education in medical sciences to people in the New York City area.  At some time in the 1990s, outside forces seized control of the Institute, corrupting it and using it to generate revenue in illegal ways.  Through an extensive pattern of mail fraud against Institute students and bank fraud against student lenders, as set forth in more detail below, the Institute has been operated and continues to be operated through a pattern of racketeering activity to the detriment of the plaintiffs.

31.  At all times relevant to this Complaint, the Institute was an enterprise within the meaning of 18 U.S.C. Section 1961 in that the Institute is a Corporation.

32.  At all times relevant to this Complaint, IAMP was a person within the meaning of 18 U.S.C. Section 1961 in that IAMP is an entity capable of holding a legal or beneficial interest in property.

7

33.   At all times relevant to this Complaint, IAMP operated or managed the Institute in that IAMP is an operator of the Institute within the meaning of New York Education Law.  On information and belief, IAMP, as a for-profit entity was responsible for making and implementing various policy decisions on behalf of the Institute which decisions were calculated to increase revenues, such as the Institute's refund policy; the decision to operate without licensure under New York Education Law; the decision not to offer refunds; and, as set forth in more detail below, the decision to falsify loan applications.

34.   At all times relevant to this Complaint, the activities of the Institute affected interstate commerce in that, among other things, the Institute's agents helped students procure loans to finance tuition through financial institutions located in states other than New York, such as Key Bank, which, on information and belief, is headquartered in Cleveland, Ohio.

35.   IAMP conducted the Institute through a pattern of racketeering activity in that its agents committed the acts set forth below in violation of 18 U.S.C. Sections 1341 and 1344:

36.   From at least as early as March, 2002, and continuing through the present day, IAMP and its agents did knowingly

and intentionally devise and intend to devise a scheme and artifice to defraud potential students at the Institute by engaging in the specific conduct detailed below, all in violation of 18 U.S.C. Section 1341.

37.  Given the Institute's status as an educational corporation and the Plaintiffs' status as students (or potential students) at the Institute, there arose a relationship which required the Institute, IAMP, and/or their agents to affirmatively disclose such facts as the significant likelihood of failure, the qualifications of instructors, and the Institute's unlicensed status.

38.  The foregoing is particularly true in that the Defendants had agents whom students would naturally expect to rely on or put trust in and who, on information and belief, possessed superior knowledge:  One or more financial aid officers who helped arrange student loans for two of the Plaintiffs; and Nancy Baer, an administrator who counseled students and listened to student complaints.

39.  Neither the Institute, IAMP, nor any of their agents disclosed to the Plaintiffs before their enrollment that the Institute was unlicensed; that the Physics instructor was poor and unqualified; or that the Plaintiffs faced a significant chance of failing Physics and thus being suspended.

40.   In particular, Plaintiff Martha Jalon met with Brian Haggerty, on information and belief an agent of IAMP, in or about March of 2002 at the Institute's office at 405 Park Avenue in Manhattan.   Brian Haggerty made no mention of the above matters at this meeting.

41.   Similarly, Plaintiff Salmeron met with Kevin Haggerty, on information and belief an agent of IAMP, on or about January 8, 2002 at the Institute's office at 91-31 Queens Boulevard, Elmhurst, New York regarding enrollment at the Institute.   Kevin Haggerty made no mention of the above matters at this meeting.   Nor were they mentioned in subsequent telephone conversations between Haggerty and Salmeron.

42.   On or about May 9, 2002, the Institute sent letters, signed by Thomas J. Haggerty, on information and belief an agent of IAMP, to each Plaintiff via first class mail advising them of the starting date of their classes.   These letters make no mention of the Institute's unlicensed status; the significant chance of failure of physics; or the qualifications of the physics instructor.

43.   Further, on or about May 21, 2002, the Plaintiffs appeared for orientation and/or their first day of classes and received various documents from the Institute's administrator Nancy Baer.   None of the documents made

10

mention of the above matters.   Nor did Ms. Baer advise the
Plaintiffs as to the above matters.     On the contrary, as
the Plaintiffs struggled through the course, Ms. Nancy Baer
reassured the Plaintiffs in general terms that the
Institute would work with the Plaintiffs and help them to
succeed.   On information and belief, Ms. Baer is an agent
of IAMP.

44.  At or around the time of the May 21 meeting, the
Plaintiffs executed the Enrollment Agreements.

45.  Had the Plaintiffs been warned, counseled, or advised
about the Institute's failure to be licensed; the lack of
qualifications of its instructor; or the significant chance
of failure of the physics class, they would not have
executed the Enrollment Agreements and would not have
enrolled in the Institute.

46.  The Plaintiffs reasonably relied on the above failure
to warn, counsel, or advise them of the above matters in
that the Defendants enjoy a position of trust and
confidence to which the Plaintiffs were subject.

47.  IAMP made use of the U.S. mail in furtherance of its
scheme to defraud in that it sent materials related to
enrollment to the Plaintiffs including the letters of May
9, 2002.   In particular, the letters of May 9, 2002
instructed the Plaintiffs of the time and place of the

meeting where they would meet with Nancy Baer and execute Enrollment Agreements.

48.   On information and belief, IAMP has engaged in similar omissions with other students, continues to do so as of the date of this Complaint, and threatens to do so in the future.

49.   The Plaintiffs were injured by reason of the above violations in that they would not have enrolled and paid or incurred liability for tuition and/or application fees had they been warned, counseled, or advised as to the above matters.

50.   Further, IAMP has engaged in systematic violation of 18 U.S.C. Section 1344 as set forth below:

51.   On information and belief, Key Bank is a federally chartered financial institution.

52.   In connection with their enrollment in the Institute, Plaintiffs Jalon and Salmeron completed applications for Key Bank's "Medachiever" loan.

53.   The application completed by Plaintiff Jalon contained a "School Section" to be completed by a "School Official."

72.   On information and belief, agents of IAMP caused the "School Section" of this application to be completed falsely and fraudulently for the purpose of obtaining revenue for IAMP.

12

54. Specifically, Item 4 of this application requests a "Title IV School Code." Agents of IAMP caused the number "021820-00" to be inserted in item 4. On information and belief, 021820-00 is an invalid number and in fact the Institute's Ultrasound program is or was not qualified under Title IV. On information and belief, agents of IAMP did knowingly insert this invalid number into the application.

55. Further, Item 5 requests the "Loan Period" of the proposed loan. Agents of IAMP caused the dates of May 2, 2002 and May 2, 2003 to be inserted in this Item, when in reality the Institute's Ultrasound program was scheduled to run from May 21, 2002 until well after May 2, 2003.

56. Further, the "School Section" requires the "School Official" to certify that the student at issue is eligible for the loan in question. One of the eligibility requirements is that the school in question be accredited. Agents of IAMP caused this certification to be made, knowing full well that the Institute, and in particular the Ultrasound program, is not accredited.

57. On information and belief, Plaintiff Jalon's application was transmitted to Key Bank on or about March 19, 2002.

58.  On information and belief, the above false and fraudulent representations were made intentionally so that Plaintiff Jalon's loan application would be approved in full by Key Bank and IAMP would enjoy revenue from her enrollment, all in violation of 18 U.S.C. Section 1344.

59.  Plaintiff Jalon was injured by the above false representations in that her loan application was approved and she incurred substantial indebtedness to Key Bank.

60.  In a similar fashion to Plaintiff Jalon, Plaintiff Salmeron made an application for a Key Bank loan in connection with her studies at the Institute.

61.  Similarly, agents of IAMP caused substantially similar false and fraudulent representations to be submitted with Plaintiff Salmeron's loan application, in violation of 18 U.S.C. 1344.  On information and belief, Plaintiff Salmeron's loan application was transmitted to Key Bank on or about May 1, 2002.

62.  Plaintiff Salmeron was injured by the above false representations in that she incurred debt she otherwise would not have incurred.

63.  On information and belief, IAMP has engaged in similar behavior in the past, continues to do so in the present, and threatens to continue doing so in the future.

14

WHEREFORE the Plaintiffs demand judgment against IAMP in the amount of three times the amount of tuition and fees paid or assumed, together with interest, costs, and attorneys fees.

## COUNT TWO: VIOLATION OF NEW YORK EDUCATION LAW

64.  The allegations of Paragraphs 1 through 63 are incorporated as if restated herein.

65.  The Institute is subject to Article 101 of New York's Education Law.

66.  Article 101, Section 5002(3)(b)(2) provides that schools such as the Institute must evenly divide the total tuition charges among the number of terms.

67.  The Institute's refund policy violates this Section in that it seeks to hold the Plaintiffs liable for at least five semesters of tuition even though they attended only one semester.

68.  Moreover, the Institute is in violation of Section 5001 in that, on information and belief, it is not licensed or registered pursuant to that Section.

69.  Further, the Institute is in violation of Section 5002(3)(g) in that more than 45 days have elapsed since the end of the Plaintiffs' attendance at the Institution and the required refund has not been made.

70. The above violations have injured the Plaintiffs in an amount not less than eighty percent (80%) of their total tuition.

WHEREFORE the Plaintiffs demand judgment against the Defendants in the amount of at least eighty percent (80%) of their tuition payments, together with interest and costs and attorneys fees pursuant to Education Law Section 5003(8).

### COUNT THREE: RESCISSION

71. The allegations of Paragraphs 1 through 70 are restated as if incorporated herein.

72. The Enrollment Agreements executed by the Plaintiffs are unconscionable in that they exact payment for 15 months of tuition from students who attend only 8 weeks of classes.

73. The shocking and outrageous nature of the Enrollment Agreements is exacerbated by the Defendants' failures to warn, counsel, or advise the Plaintiffs about the significant chance of failure of Physics; the lack of qualifications of the instructor; or the unlicensed status of the Institute.  Moreover, the Enrollment Agreements flagrantly contravene New York's Education Law in that tuition is not apportioned among the semesters.

WHEREFORE the Plaintiff's demand judgment against the Institute declaring the Enrollment Agreements void as against public policy and ordering the Institute to refund the Plaintiffs' tuition together with interest, costs, and attorneys fees.

## COUNT FOUR: FRAUD

74. The allegations of Paragraphs 1 through 73 are incorporated as if restated herein.

75. Given the Institute's status as an educational corporation and the Plaintiffs' status as students (or potential students) at the Institute, there arose a relationship which required the Institute, IAMP, and/or their agents to affirmatively disclose such facts as the significant likelihood of failure, the qualifications of instructors, and the Institute's unlicensed status.

76. The foregoing is particularly true in that the Defendants had agents whom students would naturally expect to rely on or put trust in and who, on information and belief, possessed superior knowledge: One or more financial aid officers who helped arrange student loans for two of the Plaintiffs; and Nancy Baer, an administrator who counseled students and listened to student complaints.

77. Neither the Institute, IAMP, nor any of their agents disclosed to the Plaintiffs before their enrollment that

17

the Institute was unlicensed; that the Physics instructor was poor and unqualified; or that the Plaintiffs faced a significant chance of failing Physics and thus being suspended.

78.  In particular, Plaintiff Martha Jalon met with Brian Haggerty, on information and belief an agent of both of the Defendants, in or about March of 2002 at the Institute's office at 405 Park Avenue in Manhattan.  Brian Haggerty made no mention of the above matters at this meeting.

79.  Similarly, Plaintiff Salmeron met with Kevin Haggerty, on information and belief an agent of both of the Defendants, on or about January 8, 2002 at the Institute's office at 91-31 Queens Boulevard, Elmhurst, New York regarding enrollment at the Institute.  Kevin Haggerty made no mention of the above matters at this meeting.  Nor were they mentioned in subsequent telephone conversations between Haggerty and Salmeron.

80.  On or about May 9, 2002, the Institute sent letters, signed by Thomas J. Haggerty, on information and belief an agent of both of the Defendants, to each Plaintiff via first class mail advising them of the starting date of their classes.  These letters make no mention of the Institute's unlicensed status; the significant chance of

18

failure of physics; or the qualifications of the physics instructor.

81.   Further, on or about May 21, 2002, the Plaintiffs appeared for orientation and/or their first day of classes and received various documents from the Institute's administrator Nancy Baer.  None of the documents made mention of the above matters.  Nor did Ms. Baer advise the Plaintiffs as to the above matters.  On information and belief, Ms. Baer is also an agent of IAMP.

82.   As the Plaintiffs struggled through the course, Ms. Baer reassured the Plaintiffs in general terms that the Institute would work with the Plaintiffs and help them to succeed.

83.   Had the Plaintiffs been warned, counseled, or advised about the above matters, they would not have executed the Enrollment Agreements and would not have enrolled in the Institute.

84.   The Plaintiffs reasonably relied on the Defendants' failure to warn, counsel, or advise them of the above matters in that the Defendants enjoy a position of trust and confidence to which the Plaintiffs were subject.

85.   The Plaintiffs were injured by the above in that they paid funds and/or incurred liability to enroll in the Institute, received poor instruction, paid various

application fees, and were ultimately suspended with the unsatisfactory option of repeating the same Physics class in January of 2003 for additional monies.

WHEREFORE the Plaintiffs demand judgment against the Institute and IAMP in the amount of their total tuition payments and obligations and application fees together with interests, costs, attorneys fees, and punitive damages.

## COUNT FIVE: CONSUMER FRAUD

86.    The allegations of Paragraphs 1 through 85 are incorporated as if restated herein.

87.    The conduct of the Institute and IAMP amounts to deceptive acts and/or practices within the meaning of New York General Business Law Section 349.

88.    The Plaintiffs were injured by these deceptive acts and practices in that they would not have enrolled in the Institute and paid tuition and/or incurred tuition liability but for the Defendants' deceptive acts and practices.

WHEREFORE the Plaintiffs demand judgment against IAMP and the Institute in the amount of their total tuition payments and obligations and application fees, together with interest, costs, and attorneys fees and extra damages pursuant to General Business Law Section 349(h); and

the Plaintiffs further demand an Injunction pursuant to General Business Law Section 349(h) ordering the Institute and IAMP to disclose to all potential students the Institute's unlicensed status; the lack of qualifications of the Institute's instructor; and the significant chance of failure of the Physics class.

## COUNT SIX: BREACH OF CONTRACT

89.  The allegations of paragraphs 1 through 88 are incorporated as if restated herein.

90.  By accepting the Plaintiffs as students and having them execute the Enrollment Agreement, the Institute assumed a contractual obligation to provide instruction of reasonable quality by qualified instructors and to provide circumstances under which students with the Plaintiffs' backgrounds would be able to succeed with diligent efforts.

91.  The Institute breached the above obligations in that the instruction was of poor quality; the instructors were not qualified; and as a result the Plaintiffs failed despite diligent efforts.

92.  The Plaintiffs were injured by these breaches in that they paid and/or assumed obligations for tuition; paid and or assumed liability for application fees; received poor instruction; and were ultimately prevented from continuing to take classes at the Institute, with the unsatisfactory

alternative of repeating the same deficient class in 2003 for extra money.

WHEREFORE the Plaintiffs demand judgment against the Institute in the total amount of all tuition and fees paid or assumed, together with interest, costs, and attorneys fees.

## COUNT SEVEN: NEGLIGENCE

93.  The allegations of Paragraphs 1 through 92 are incorporated as if restated herein.

94.  The Institute and IAMP had a duty to all potential students, and in particular the Plaintiffs, to take reasonable steps to make sure that all enrolling students are suitably matched to the programs in which they enroll so that success will follow from diligent efforts.

95.  The Institute and IAMP failed in this duty towards the Plaintiffs in that they did not offer any placement or entrance exam; did not maintain any requirements beyond a high school diploma; and did not counsel or warn potential students about the difficulty of the Physics class.

96.  As a result of the above negligence, the Plaintiffs were injured in that they enrolled in the Institute, paid and/or assumed liability for tuition and application fees, and subsequently failed their Physics class, resulting in suspension from the Institute.

WHEREFORE the Plaintiffs demand judgment against the
Defendants in the total amount of all tuition and fees paid
or assumed, together with interest, costs, attorneys fees,
and punitive damages.

Respectfully submitted,

David Abrams (DA-8126),
   Attorney for Plaintiffs
Foy Salmeron, Martha Jalon, and
Zoya Bangiew

305 Broadway, Ninth Floor
New York, NY 10007
Tel. 212-897-5821
Fax  212-897-5811

Dated:   New York, NY
         November 11, 2002

## VII. Demand for Jury Trial

The Plaintiffs demand a jury trial on all issues so
triable.

David Abrams (DA-8126),
   Attorney for Plaintiffs
Foy Salmeron, Martha Jalon, and
Zoya Bangiew

305 Broadway, Ninth Floor
New York, NY 10007
Tel. 212-897-5821
Fax  212-897-5811

Dated:   New York, NY
         November 11, 2002